**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 20, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————————

AMERICAN FIDELITY ASSURANCE
COMPANY,

     Plaintiff - Appellee,

v.

     No. 15-6009

THE BANK OF NEW YORK MELLON,

     Defendant - Appellant.
———————————————————

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 5:11-CV-01284-D)**
———————————————————

Charles A. Rothfeld, Mayer Brown, LLP, Washington, DC (Paul W. Hughes and James
F. Tierney, Mayer Brown, LLP Washington, DC; and Matthew D. Ingber and
Christopher J. Houpt, Mayer Brown, LLP, New York, New York, with him on the
briefs), appearing for Appellant.

Stuart W. Emmons (William B. Federman, on the brief), Federman & Sherwood,
Oklahoma City, Oklahoma, appearing for Appellee.
———————————————————

Before **LUCERO**, **MATHESON**, and **PHILLIPS**, Circuit Judges.
———————————————————

**MATHESON**, Circuit Judge.
———————————————————

     American Fidelity Assurance Company ("American Fidelity") sued the Bank of

New York Mellon ("BNYM") in the Western District of Oklahoma for claims arising

from BNYM's conduct as Trustee of a trust holding mortgage-backed securities owned by American Fidelity. BNYM did not assert a personal jurisdiction defense in its first two motions to dismiss or in its answer. In its third motion to dismiss, BNYM argued it was not subject to general jurisdiction in Oklahoma. The district court denied the motion, concluding BNYM had waived the defense by failing to raise it in prior filings. BNYM challenges that decision in an interlocutory appeal. Exercising jurisdiction under 28 U.S.C. § 1292(b), we affirm.

## I. **BACKGROUND**

### A. *Factual History*

Countrywide Financial Corporation and related entities ("Countrywide") sold mortgage-backed securities ("Certificates"). BNYM, a commercial bank and securities services company, is chartered under New York law and its principal place of business is New York. Through Pooling and Service Agreements between Countrywide and BNYM, Countrywide created trusts to hold the Certificates for the benefit of the Certificate holders and appointed BNYM to administer the trusts as Trustee.

American Fidelity, an insurance company, purchased Certificates from Countrywide. BNYM was therefore Trustee of the trusts holding American Fidelity's securities.

### B. *Procedural History*

American Fidelity sued BNYM, invoking diversity jurisdiction and alleging that BNYM breached contractual and fiduciary duties as Trustee.

In April 2012, BNYM moved to dismiss American Fidelity's complaint for failure to state a claim. The district court granted BNYM's motion, and American Fidelity filed an amended complaint. Shortly thereafter, American Fidelity filed a second amended complaint, which is the operative complaint for this appeal.

In May 2013, BNYM moved to dismiss American Fidelity's second amended complaint, arguing American Fidelity again failed to state a claim. The district court denied the motion. BNYM did not assert a personal jurisdiction defense in either of its pre-answer motions to dismiss.

In January 2014, BNYM answered American Fidelity's second amended complaint, and again did not assert a personal jurisdiction defense. Four days later, the Supreme Court decided *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).

The parties filed a joint status report and discovery plan in which BNYM stated it "may move to dismiss the case in light of recent Supreme Court decisions that limit the permissible scope of personal jurisdiction under the U.S. Constitution." App. at 44.

In March 2014, BNYM filed a third motion to dismiss, arguing for the first time that the court lacked personal jurisdiction over BNYM. BNYM contended the court lacked general jurisdiction based on *Daimler*, and also lacked specific jurisdiction because American Fidelity failed to allege sufficient contacts between BNYM and Oklahoma. Before the court ruled on the motion, the parties stipulated to the following jurisdictional facts:

    a.      BNYM has conducted corporate trust business or services for clients that are located in the State of Oklahoma;

b.      BNYM has conducted commercial indenture trust business for clients that are located in the State of Oklahoma;

c.      BNYM has provided investment services for trusts, insurance companies, and/or banks that are located in the State of Oklahoma;

d.      BNYM has provided commercial broker-dealer services for clients that are located in the State of Oklahoma;

e.      BNYM has solicited business from municipal or state governmental organizations that are located in the State of Oklahoma; and

f.      BNYM has provided investment services for municipal or state governmental organizations that are located in the State of Oklahoma.

App. at 51-52.

The district court denied the motion, concluding BNYM had waived any general jurisdiction defense under Federal Rule of Civil Procedure 12(h).  It explained that *Daimler* applied the standard previously articulated in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).  BNYM was therefore not presenting a new defense that had been unavailable when it previously moved to dismiss American Fidelity's original and second amended complaints and when it filed its answer.  The court did not address BNYM's arguments about specific jurisdiction because BNYM had waived its general jurisdiction defense, thereby allowing the court to exercise personal jurisdiction over BNYM.

BNYM now seeks interlocutory review of the district court's decision.

## II. **APPELLATE JURISDICTION**

Although BNYM appeals the district court's denial of its motion to dismiss—which typically is a non-final order—we have jurisdiction under the "two-tiered

- 4 -

arrangement," *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 47 (1995), described in 28 U.S.C. § 1292(b).

The district court denied BNYM's third motion to dismiss on September 10, 2014, and certified that order for interlocutory appeal under 28 U.S.C. § 1292(b) on December 12, 2014. On December 22, 2014, BNYM timely requested approval from the Tenth Circuit to file an interlocutory appeal under § 1292(b). *See id.* (authorizing court of appeals to hear interlocutory appeals certified by a district court if "application is made to [the circuit court] within ten days after the entry of the [certification] order"). The Tenth Circuit granted BNYM's application. We therefore have jurisdiction under 28 U.S.C. § 1292(b).

## III. **DISCUSSION**

BNYM argues its general jurisdiction defense was not available before *Daimler* was decided but was available afterwards because *Daimler* narrowed the basis for general jurisdiction. We disagree. BNYM's general jurisdiction defense was available when it first responded to American Fidelity's original and second amended complaints and when it filed its answer. By "available" we mean the standard it relies upon would have been the same if it had relied on it earlier. Put another way, the general jurisdiction standard BNYM asserts was the same before and after *Daimler* was decided, and it was therefore available to BNYM from the outset of the litigation.[1]

_____

[1] The district court did not decide, nor do we, whether the state courts in Oklahoma may exercise general jurisdiction over BNYM. We address only whether BNYM has waived its opportunity to contest general jurisdiction in this case.

Federal Rule of Civil Procedure 12(h)(1) provides that a party waives the defenses listed in Rule 12(b)(2)-(5), including lack of personal jurisdiction, Rule 12(b)(2), by failing to assert them in a responsive pleading or an earlier motion. Rule 12(g)(2) limits the waiver rule to defenses that were "available to the party but omitted from its earlier motion." BNYM waived its personal jurisdiction defense if it was available when it moved to dismiss American Fidelity's original and second amended complaints and when it filed its answer.

Whether a party has waived a personal jurisdiction defense is a mixed question of law and fact. *FDIC v. Oaklawn Apts.*, 959 F.2d 170, 173 (10th Cir. 1992). We review the district court's legal conclusions de novo. *Id.* Although we typically review the district court's factual findings for clear error, *id.*, the parties do not contest any facts on appeal.

Our discussion proceeds as follows. First, we explain the concept of general jurisdiction. Second, we identify the standard for general jurisdiction developed and applied in the Supreme Court and the Tenth Circuit before *Daimler* was decided. Third, we discuss the *Daimler* decision. Finally, we show that the general jurisdiction defense that BNYM raised and the district court rejected as waived was available to BNYM when it moved to dismiss American Fidelity's original and second amended complaints and when it filed its answer. As a result, we agree with the district court that BNYM waived its general jurisdiction defense, and we affirm dismissal of this case.

## A. *General Jurisdiction*

Under the Fourteenth Amendment, "a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear*, 131 S. Ct. at 2853 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (brackets omitted). Two personal jurisdiction categories emerged from this standard: general jurisdiction and specific jurisdiction. *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090-91 (10th Cir. 1998).

A court exercises general jurisdiction when it asserts personal jurisdiction "over a defendant in a suit *not* arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984) (emphasis added). "Where a court has general jurisdiction over a defendant, that defendant may be called into that court to answer for any alleged wrong, committed in any place, no matter how unrelated to the defendant's contacts with the forum." *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) (quotations omitted).

## B. *Pre-Daimler Precedent*

### 1. The Supreme Court and the *Goodyear* standard

In *Goodyear*, the Supreme Court explained, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." 131 S. Ct. at 2851

(quotations omitted). The *Goodyear* standard was not new; it summarized a long-standing jurisdictional rule. *See, e.g.*, *Int'l Shoe*, 326 U.S. at 318 ("[T]here have been instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."). Before *Goodyear*, the Supreme Court applied the general jurisdiction standard in two cases, finding a proper exercise of general jurisdiction in one and an improper exercise in the other.

First, in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), the Supreme Court held an Ohio state court could properly exercise general jurisdiction over Benguet, a mining company incorporated in the Philippines. *Id.* at 438, 446. Benguet owned and operated mining properties in the Philippines and owned no mining properties in Ohio. *Id.* at 447-48. Mining operations ceased during the Japanese occupation of the Philippines. *Id.* at 447.

During that time, Benguet's president—who was also the company's general manager and principal stockholder—temporarily moved to Ohio. *Id.* at 447. He maintained an office in Ohio, where he stored company files and conducted company business. *Id.* at 447-48. He corresponded about company business—including supervising the rehabilitation of the company's properties in the Philippines—and drew and distributed salary checks from the office. *Id.* at 448. He used two Ohio-based bank accounts for company funds and an Ohio bank as the transfer agent for company stock. *Id.* He also held several directors' meetings at his home or office in Ohio. *Id.* In short, the president supervised and managed Benguet from Ohio during the wartime occupation

of the company's properties.  *Id.*  The Court concluded these activities were sufficient to allow an Ohio court to assert general jurisdiction over the corporation without violating due process.  *Id.*

Second, in *Helicopteros*, the Supreme Court held a foreign corporation's activities in Texas were insufficient to allow Texas state courts to exercise general jurisdiction over the corporation.  *Helicopteros*, 466 U.S. at 418-19.  Helicopteros was a Colombian corporation with its principal place of business in Bogotá.  It provided helicopter transportation for oil and construction companies in South America.  *Id.* at 409.  One of its helicopters crashed in Peru, killing four passengers who were employed by a Texas-based oil consortium involved in a Peruvian pipeline.  *Id.* at 409-10.  The decedents' survivors and representatives attempted to sue the Colombian corporation in Texas state court.  *Id.* at 410, 412.

Helicopteros had no place of business in Texas and had never been licensed to do business in Texas.  *Id.* at 416.  Its CEO once flew to Texas for contract negotiations with the consortium.  *Id.* at 410.  But the contract was ultimately formalized in Peru, was written in Spanish on official Peruvian government stationery, indicated that all relevant parties would reside in Peru, provided that controversies arising from the contract would be submitted to Peruvian courts, and stipulated that payments under the contract would be made through Bank of America in New York City.  *Id.* at 410-11.

Helicopteros did have some contacts with the forum.  It purchased $4 million worth of helicopters and helicopter parts from a Texas supplier, sent prospective pilots to Texas for training and to retrieve the helicopters, and sent management and maintenance

personnel to Texas for training and consultation.  *Id.* at 411.  Finally, it received $5 million in payments from the consortium drawn on a Texas bank.  *Id.*

The Supreme Court considered each of Helicopteros's contacts with the forum state and concluded they were each too isolated and inconsequential to allow a Texas court to exercise general jurisdiction over the corporation.  *Id.* at 415-18 & n.12.

\*     \*     \*     \*

Against this backdrop, *Goodyear* held a North Carolina court could not exercise general jurisdiction over corporate defendants whose connections with the forum were based solely on their products reaching North Carolina through the stream of commerce. 131 S. Ct. at 2851.  The defendants were "indirect subsidiaries" of Goodyear USA (an Ohio corporation) and were not registered to do business in North Carolina.  *Id.* at 2852. They had no place of business, employees, or bank accounts in the state.  *Id.*  They did not solicit business or directly ship products there.  *Id.*  The defendants' products reached North Carolina only indirectly through Goodyear USA's distribution process—the products were custom ordered by other Goodyear USA affiliates who distributed them in North Carolina.  *Id.*  The Court concluded that general jurisdiction was not proper based solely on the defendants' products being distributed to the forum state through the stream of commerce.  *Id.* at 2856.

As noted above, *Goodyear* explained general jurisdiction is proper if a corporate defendant's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State."  *Id.* at 2851 (quotations omitted).

2. **The Tenth Circuit**

The Tenth Circuit has addressed general jurisdiction in several cases, but BNYM focuses its arguments on *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86 (10th Cir. 2012) (unpublished), and *Monge v. RG-Petro Machinery (Grp.) Co.*, 701 F.3d 598 (10th Cir. 2012).

In *Grynberg*, the Tenth Circuit considered whether the corporate defendant's CEO—who was also an individually named defendant in the case—was subject to general jurisdiction in Colorado because he had been a litigant in Colorado courts on numerous occasions. 490 F. App'x at 93. The court first contrasted the facts in *Grynberg* with those supporting general jurisdiction in *Perkins*. *Id.* at 95. It also concluded the individually named defendant's litigation activities did not qualify as jurisdictional contacts. *Id.* at 95-96. Consistent with *Goodyear* and yet-to-be-decided *Daimler*, the *Grynberg* court concluded the CEO defendant did not have continuous and systematic business contacts with Colorado, *id.* at 96, and did not, therefore, have to decide whether the contacts rendered him effectively at home there.

In *Monge*, the Tenth Circuit concluded the district court could not exercise general jurisdiction over a Chinese corporate defendant based on its contacts with Oklahoma. 701 F.3d at 602, 620. The defendant did not have a physical presence in Oklahoma. *Id.* at 620. It had sent a few emails to a business in Oklahoma, made a small number of sales to a single business there, and its representatives once visited the state for a few hours. *Id.* The court concluded these contacts with the forum were not "so continuous and

- 11 -

systematic as to render [it] essentially at home in the forum State." *Id.* (quoting

*Goodyear*, 131 S. Ct. at 2851).

## C.  *Daimler*

In 2014, the Supreme Court held in *Daimler* that a federal court in California did

not have general jurisdiction over Daimler, a German corporation.  134 S. Ct. at 751.

Daimler had an Argentine subsidiary, MB Argentina.  *Id.*  Daimler also had a separate

subsidiary, DaimlerChrysler North America Holding Corporation, which had its own

subsidiary, Mercedes-Benz USA, LLC ("MBUSA").  *Id.* at 752 & n.3.  MBUSA was

incorporated in Delaware, and its principal place of business was in New Jersey.  *Id.* at

752.  It had facilities in California, including a regional office, a vehicle preparation

facility, and the Mercedes Benz Classic Center.[2]  *Id.*  Plaintiffs sued Daimler in federal

court in California and asserted claims arising from MB Argentina's activities in

Argentina.  *Id.* at 751.  Plaintiffs asserted Daimler was subject to general jurisdiction in

California based on MBUSA's contacts with the state.  *Id.*

The Court assumed for purposes of its decision that MBUSA was "at home" in

California, *id.* at 758, but nonetheless concluded Daimler was not, even if MBUSA's

California contacts were imputed to Daimler, *id.* at 760.  The Court, invoking *Goodyear*,

said: "the inquiry under *Goodyear* is not whether a foreign corporation's in-forum

---

[2] The Classic Center is a facility offering a variety of services for enthusiasts, including workshops, parts, sales, and an events hall.  *See* Mercedes-Benz, Classic Center, http://www.mbusa.com/mercedes/enthusiast/classic_center (last accessed Dec. 16, 2015).

contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so continuous and systematic as to render it essentially at home in the forum state.'" *Id.* at 761 (quoting *Goodyear*, 131 S. Ct. at 2851) (brackets omitted). The Court's application of the *Goodyear* "at home" standard was brief:

> Here, neither Daimler nor MBUSA is incorporated in California, nor does either entity have its principal place of business there. If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which MBUSA's sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants "to structure their primary conduct with some minimum assurances as to where that conduct will and will not render them liable to suit."

*Id.* at 761-62 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

The Court, explaining *Goodyear*, stated that "[g]eneral jurisdiction . . . calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 762 n.20. Consequently, when determining where a corporation can be deemed "at home" when it has significant contacts in many fora, *Daimler* suggested the place of incorporation and principal place of business are particularly, though not solely, important.

### D. *BNYM Waived its Personal Jurisdiction Defense*

BNYM argues that it is not subject to general jurisdiction in Oklahoma "[b]ecause Oklahoma is not BNYM's place of incorporation or principal place of business—and because there are no 'exceptional' circumstances that would warrant a departure from the

- 13 -

governing rule." Aplt. Br. at 10. Not only was this argument available to BNYM when it moved to dismiss and filed its answer, it misreads and truncates both *Daimler* and Tenth Circuit precedent.

### 1. **Waiver** a**nd** *Daimler*

BNYM argues *Daimler* limited general jurisdiction to a corporation's state of incorporation or principal place of business, except in exceptional circumstances not present in this case. *Id.* at 12-21. *Daimler*, like *Goodyear*, did not limit general jurisdiction in this manner. Moreover, *Daimler* rejected BNYM's notion, *id.* at 14, that *Goodyear* required only that "a corporation engages in a substantial, continuous, and systematic course of business [in the forum]." *Daimler*, 134 S. Ct. at 761 (quotations omitted).

Instead, *Daimler* reaffirmed the *Goodyear* standard: general jurisdiction is proper when a "corporation's affiliations with the state are so continuous and systematic *as to render them at home in the forum state*." *Id.* (quoting *Goodyear*, 564 U.S. at 2851) (emphasis added). BNYM ignores the "at home" part of the *Daimler/Goodyear* standard.

BNYM waived its defense based on *Daimler* because the same defense was available to BNYM when it filed its motions to dismiss and its answer. This is so because *Daimler* reaffirmed and applied *Goodyear*, and the defense was available under *Goodyear*.

### 2. **Waiver and Tenth Circuit Cases**

BNYM also contends its general jurisdiction argument was not available until *Daimler* because this court in *Grynberg* and *Monge* interpreted *Goodyear* to permit

- 14 -

general jurisdiction so long as a corporation had continuous and systematic contacts with the forum state. Aplt. Br. at 30. We did no such thing. This court has not permitted, and could not permit under *Goodyear*, general jurisdiction based only on continuous and systematic contacts with the forum. The fundamental flaw in BNYM's argument is its failure to recognize that *Grynberg* and *Monge denied* general jurisdiction.

Once again, in attempting to restate our precedent, BNYM ignores the "at home" part of the Tenth Circuit/*Goodyear* standard. *Monge* stated that general jurisdiction is proper only when the defendant's contacts with the forum state are (1) continuous and systematic and (2) sufficient to render it at home there, and concluded the defendant's contacts did not satisfy this standard. 701 F.3d at 620. *Grynberg* determined the defendant's contacts were not continuous and systematic, 490 F. App'x at 96, obviating the need to address whether they were sufficient to render the defendant at home in the forum. Indeed, this court has repeatedly denied general jurisdiction based on the *Goodyear* standard.[3] *Grynberg* and *Monge* both applied *Goodyear* and are consistent

---

[3] In addition to *Grynberg* and *Monge*, the Tenth Circuit addressed and rejected general jurisdiction four other times since *Goodyear*. *See Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 788 (10th Cir. 2013) (unpublished) (holding a contract between Wyoming and Minnesota under which Wyoming prisoners would be housed in a facility in Minnesota was insufficient to create general jurisdiction over Minnesota prison officials); *Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can., Ltd.*, 703 F.3d 488, 493-94 (10th Cir. 2012) (holding district court could not assert general jurisdiction over a foreign corporation based on the managing director's residence in the state, under an agency theory); *Shrader v. Beann*, 503 F. App'x 650, 653-54 (10th Cir. 2012) (unpublished) (reaffirming holding—from previous appeal in the same suit—that the district court could not assert general jurisdiction over a website that had no intrinsic connection to the forum state and that did not conduct business with forum residents in such a sustained manner that it was tantamount to physical presence in the forum); *Beyer v. Camex Equip. Sales &*

Continued . . .

with *Daimler*. Neither case established Tenth Circuit precedent preventing BNYM from raising its general jurisdiction defense because both employed the same standard that the Supreme Court reaffirmed and applied in *Daimler*.[4]

\* \* \*

BNYM's general jurisdiction defense was available when it previously moved to dismiss American Fidelity's original and second amended complaints and when it filed its answer because the defense could be asserted to the same extent under *Goodyear* as it could be asserted under *Daimler*.[5] The defense is therefore waived under Rule 12(h).

---

*Rentals, Inc.*, 465 F. App'x 817, 818 (10th Cir. 2012) (unpublished) (holding district court in Colorado could not assert general jurisdiction over Canadian manufacturer after its truck was purchased by a Wyoming corporation and used by a Wyoming resident to perform work in Colorado when the truck failed and caused injuries, and the Canadian corporation lacked continuous and systematic business contacts with Colorado).

[4] BNYM's reliance on *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014), is misplaced. In that case, the Second Circuit determined that a general jurisdiction defense had not been waived because the circuit's pre-*Daimler* precedent did not allow the defense and *Daimler* did. *Id.* at 135-36. By contrast, as explained above, the Tenth Circuit's pre-*Daimler* precedent would have allowed BNYM's defense to the same extent *Daimler* would.

[5] Concurring in the judgment, Justice Sotomayor described the majority's assessment of a corporate defendant's contacts as a "proportionality inquiry" made in light of the corporation's "nationwide and worldwide" activities. *Daimler*, 134 S. Ct. at 770 (Sotomayor, J., concurring). She critiqued the majority's analysis and characterized the proportionality inquiry as a "new rule" requiring that "for a foreign defendant to be subject to general jurisdiction, it must not only possess continuous and systematic contacts with a forum State, but those contacts must surpass some unspecified level when viewed in comparison to the company's nationwide and worldwide activities." *Id.* (quotations omitted). BNYM does not assert an argument based on anything *Daimler* may have added to *Goodyear*'s general jurisdiction test. Even if Justice Sotomayor's concurring view of what she calls *Daimler*'s "proportionality inquiry" were a correct

Continued . . .

## IV. **CONCLUSION**

We affirm the district court's decision denying BNYM's motion to dismiss.[6]

---

reading of *Daimler*'s majority opinion, *id.*, BNYM does not challenge general jurisdiction based on it.

[6] Having concluded BNYM waived its defense as to general jurisdiction, thereby permitting the district court to exercise personal jurisdiction over BNYM, we need not consider whether the court could also exercise specific jurisdiction over BNYM.