# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 13, 2016

Lyle W. Cayce
Clerk

No. 15-30709

RONDA CRUTCHFIELD, wife of/and; WADE CRUTCHFIELD; AUDREY HAINES, wife of/and; JOSEPH A. HAINES; MATELLA MOSBY; VELMA B. RENARD,

      Plaintiffs - Appellants

BENJAMIN DIGGINS, SR.; SANDY WHEELER; ADRIANN WHITAKER; HAROLD WHITAKER; MATTIE WOMBLE,

      Appellants

v.

SEWERAGE AND WATER BOARD OF NEW ORLEANS; HILL BROTHERS CONSTRUCTION COMPANY, INCORPORATED; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; GRIFFIN DEWATERING SOUTHWEST, L.L.C.; BLUE IRON FOUNDATION AND SHORING, L.L.C.; BHATE GEOSCIENCES CORPORATION; LIBERTY MUTUAL FIRE INSURANCE COMPANY,

      Defendants - Appellees

Appeals from the United States District Court
for the Eastern District of Louisiana

Before SMITH, BARKSDALE, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Located below sea level, with Lake Pontchartrain to the north and the Mississippi River to the south, New Orleans is particularly susceptible to flooding. This case arises from recent efforts to address this intractable

No. 15-30709

problem. Created twenty years ago, the Southeast Louisiana Urban Flood Control Project aimed to reduce flooding by improving draining canals, increasing capacity for pump stations, and constructing new pump stations. But its efforts at constructing a new canal in New Orleans's Ninth Ward resulted in complaints of property damage to surrounding homes. The result was this lawsuit seeking to certify a class of nearby property owners asserting claims of damaged property resulting from a variety of construction activities. The district court denied class certification, holding that the Rule 23 requirements of commonality, predominance, and superiority were lacking, primarily because of the difficulty of establishing which defendants and which conduct caused the alleged damages. We consider whether that decision was an abuse of discretion.

## I.

Although dwarfed by the later flooding of Hurricane Katrina, the New Orleans area experienced a major flood in May 1995 that caused a number of deaths and more than $3 billion in damage. That reminder of the threat that flooding poses to southeast Louisiana led Congress to provide increased flood protection for the region in the Water Resources Development Act of 1996. That law authorized the Army Corps of Engineers to partner with state and local agencies to improve drainage and prevent flooding in Orleans, Jefferson, and St. Tammany Parishes via the Southeast Louisiana Urban Flood Control Project. Pub. L. No. 104–303, 110 Stat. 3658, § 533.

The complaints that gave rise to this lawsuit are not the only reported problems with the Project's drainage improvement efforts. Other construction projects have resulted in dozens of lawsuits that proceeded as consolidated actions rather than class actions. *See Holzenthal v. Sewerage Water Bd. of New Orleans*, 999 So.2d 1191 (La. App. 4 Cir. 2008) (three consolidated cases);

No. 15-30709

*Shimon v. Sewerage and Water Bd. of New Orleans*, No. CIV.A.05-1392, 2006 WL 2475309, at *1 (E.D. La. Aug. 24, 2006) (sixty-six consolidated cases).

This case that Plaintiffs want to pursue as a class action involves the construction of the Dwyer Road Intake Canal, a 7,000-feet-long, 14-to-16-feet-deep box culvert along Dwyer Road in New Orleans' Ninth Ward. The Project required the excavation of 110,000 cubic yards of soil, the erection of a temporary retaining structure, and significant pile driving. A comprehensive dewatering effort was also implemented to keep ground and rain water from filling excavated areas. The project began in September 2008 and took more than five years to complete.

The named plaintiffs filed this lawsuit in state court in August 2012, seeking to represent a class of property owners and residents who owned immovable property or resided within 1,000 feet to the north or south of the Project. Approximately 1,054 houses are located within this area. Plaintiffs allege that construction and related activities such as excavation, dewatering, and pile driving damaged and stigmatized their property and caused them mental anguish and emotional distress.

The suit alleges state law causes of action for inverse condemnation; strict liability under Louisiana Civil Code Articles 2317, 2317.1, and 667; failure to protect from vice, ruin or defect under Civil Code Articles 662, 667, and 668; negligence; and intentional torts. Plaintiffs originally sued several defendants but then dismissed all of them except for the Sewerage and Water Board of New Orleans, which Plaintiffs claim exercised oversight and control over the Project. Left as the sole defendant, the Board filed a third party demand against Hill Brothers Construction, the general contractor for the Project. Hill Brothers removed the suit to federal court under the federal officer removal statute (28 U.S.C. § 1442(a)(1)) on the ground that its challenged conduct related to work it performed on a Corps of Engineers

contract.  Hill Brothers also brought its subcontractors, Blue Iron Foundation and Shoring, L.L.C., Griffin Dewatering Southwest, L.L.C., and Bhate Geosciences Corporation into the case as third party defendants.[1]  Plaintiffs later named Hill Brothers, its subcontractors, and its insurers as direct defendants in an amended pleading.

Plaintiffs sought remand to state court, arguing that Hill Brothers did not comply with the specifications of the Corps contract and thus could not establish the government contractor defense.  The district court disagreed and kept the case in federal court.  Plaintiffs tried to appeal that jurisdictional ruling by invoking a provision in the Class Action Fairness Act that grants courts of appeals the discretion to engage in interlocutory review of remand rulings.  28 U.S.C. § 1453(c).  But we dismissed the appeal, concluding that there was no authority for interlocutory review because removal was based on the federal officer removal statute rather than the statute governing removal of class actions.  *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 603 F. App'x 350 (5th Cir. 2015).

Plaintiffs then moved to certify a class.  The district court denied Plaintiffs' motion, concluding that they failed to satisfy the requirements of commonality under Rule 23(a) and predominance and superiority under Rule 23(b)(3).  We then granted Plaintiffs' request for an interlocutory appeal pursuant to Rule 23(f).

## II.

Plaintiffs do not attempt to revive their challenge to federal jurisdiction that we previously held we did not have jurisdiction to consider.  But with the

---

[1] Blue Iron installed and extracted metal sheet pilings on the Project as part of the temporary restraining structure; Griffin designed, installed, and maintained the dewatering system for the Project; and Bhate is alleged to have provided geotechnical services and "aid in [quality control]" on the Project.

Rule 23(f) procedure now giving us appellate jurisdiction over the certification decision, we may consider *sua sponte* whether the district court had jurisdiction over the case that would authorize a certification ruling. *See Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985) ("United States District Courts and Courts of Appeals have the responsibility to consider the question of subject matter jurisdiction *sua sponte* if it is not raised by the parties and to dismiss any action if such jurisdiction is lacking.").

We agree with the district court that jurisdiction exists under the federal officer removal statute. That statute creates federal jurisdiction even over cases brought against private parties if they are sued for conduct they committed under the direction of federal authorities and for which they have a colorable defense under federal law. *See Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 460–61 (5th Cir. 2016); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397–98 (5th Cir. 1998). The only requirement for federal officer removal contested in the trial court was whether Hill Brothers (the removing party) has a colorable argument that it is entitled to the government contractor defense. That defense provides immunity to contractors for conduct that complies with the specifications of a federal contract. *See Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). As Hill Brothers need prove for jurisdictional purposes only that its entitlement to the defense is subject to reasonable debate, *Winters,* 149 F.3d at 400, our review of the record supports the district court's conclusion that the federal officer removal statute applies. Indeed, whether the contractor defendants are entitled to the immunity is, according to Plaintiffs, one of the common questions in this case that make certification appropriate.

### III.

We thus turn to the district court's denial of the motion for class certification, which we review for abuse of discretion. *Allison v. Citgo*

No. 15-30709

*Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998). "Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation." *Id.* And a district court's expertise in case management and overseeing trials is particularly useful in making the predominance and superiority inquiries of Rule 23(b)(3), which require envisioning what a class trial would look like. S*ee, e.g., Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).

For all Rule 23 class actions, a party seeking certification must show that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). The lawsuit must then meet one of the criteria found in Rule 23(b). FED. R. CIV. P. 23(b). The relevant provision here is Rule 23(b)(3), which allows a class action to be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

Although the district court gave three separate grounds for denying the motion for class certification (commonality under Rule 23(a); and both predominance and superiority under Rule 23(b)(3)), it found that the "fatal defect" was the lack of predominance. We agree that predominance is the most glaring obstacle to certifying this case, so we address only that ruling in affirming the district court's decision.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*

No. 15-30709

*Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This inquiry requires "courts to . . . careful[ly] scrutiny[ize] the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). As the Supreme Court recently explained:

> [a]n individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class–wide proof.'

*Id.* (quoting 2 William B. Rubenstein, NEWBERG ON CLASS ACTIONS §4:50, pp. 196–97 (5th ed. 2012)). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (quoting 7AA Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1778, pp. 123–24 (3d ed. 2005)). At bottom, the inquiry requires the trial court to weigh common issues against individual ones and determine which category is likely to be the focus of a trial.

In performing that assessment, the district court did not abuse its discretion in concluding that individualized questions of causation would be the central, or predominant, issue when this case is tried. It explained that to establish causation, class members would have to present individualized evidence related to the age, size, structure, location, and damage of each affected property. Indeed, the number of defendants and different conduct they engaged in demonstrate how individualized this inquiry will be. Plaintiffs contend that a variety of construction activities, performed by the various defendants at different times over a five year period, caused their damages. Examples include the distinct acts of engineering and construction design, pile

7

driving, dewatering, earth moving, equipment hauling, and debris removal. To prevail, each plaintiff will need to prove which activities performed by which defendants caused which damages to a particular property. Repeat that inquiry for the more than 1,000 houses that would make up the proposed class, and a "series of mini-trials" would result. *See State of Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 328 (5th Cir. 1978).

Looking beyond the allegations to the evidence Plaintiffs hope to use to establish causation, the district court found even more indications of how particularized this evidence will be for each property. Plaintiffs' own experts acknowledge that not every property responds to vibrations and dewatering in the same way. For example, a geoprofessional engineer admitted that vibrations may affect structures within the same neighborhood differently, depending on the location of the structure, its construction, the code conditions under which it was built, and even whether the structure is "in tune" with the frequency of the vibration. Another of their experts opined that the level of ground and structure vibrations caused by construction activities depends on several variables including, for example, soil medium, construction method, and heterogeneity of soil deposits at the site.

Plaintiffs argue, however, that individualized proof of causation is not required for their pile driving and dewatering claims under Louisiana law. They cite *Lombard v. Sewerage & Water Bd. of New Orleans*, 284 So.2d 905 (La. 1973), another case involving claims of property damage related to the construction of a New Orleans drainage canal. *Lombard* involved seventeen consolidated lawsuits with 119 plaintiffs. *Id.* at 906. Only eight of the 119 plaintiffs testified, but the plaintiffs stipulated that if each plaintiff were called to testify, their testimony as to causation and damages would be substantially the same as the eight testifying plaintiffs. *Id.* at 912. The Supreme Court of Louisiana found that the plaintiffs' testimony regarding the condition of their

No. 15-30709

properties sufficiently established that their damages were caused by the construction. *Id.* at 913. Based on *Lombard*, Plaintiffs argue that their testimony as to the condition of their property before and after the construction activities, combined with other data, should allow causation to be determined on a classwide basis.

But *Lombard* was not a class action. The eight testifying plaintiffs were only representing other named parties who had stipulated that their testimony would be substantially similar; they were not seeking to represent the interests of hundreds of unnamed parties which gives rise to the due process concerns that animate Rule 23's requirements. *See Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979).

Moreover, while causation, like most things, may be proved circumstantially, under the governing Louisiana law "circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty." *Lombard*, 284 So.2d at 913. A number of such other hypotheses exist here and would have to be considered in determining causation. Another of the Plaintiffs' experts acknowledges that many homes in the area had preexisting damage or "chronic conditions unrelated to construction," and he admits that every item on Plaintiffs' list of alleged damages could be caused by something other than the canal project. Plaintiffs also testified that some of their homes were damaged in Hurricane Katrina; one plaintiff did not have a structural engineer inspect her home's foundation post-Katrina to ensure it was safe for rebuilding; and other plaintiffs do not know if the contractors who repaired their homes were licensed or had the proper permits. The district court was reasonably concerned that individual questions regarding causation would predominate even if circumstantial proof were used.

Although the district court called it the "fatal defect," causation is not the only individualized issue. Damages is another. Plaintiffs argue that

damages can be determined using a single formulaic approach, but they have not provided one. Any such formula would at a minimum need to take account of the variances in age, size, type, construction, condition, soil composition, and location of the properties. *See Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (finding that plaintiffs' damages claims were not subject to any formulaic calculation because (1) "each . . . plaintiff suffered different alleged periods and magnitudes of exposure . . . and different alleged symptoms"; (2) "some [plaintiffs] allege[d] both personal and property injuries while others allege[d] only one or the other"; and (3) "many plaintiffs allege[d] . . . emotional and other intangible injuries . . . [which] necessarily implicates the subjective differences of each plaintiff's circumstances . . . ."); *Corley v. Orangefield Indep. Sch. Dist.*, 152 F. App'x 350, 355 (5th Cir. 2005) (affirming denial of class certification in suit brought by landowners against electric company for exceeding terms of easements because of the "necessity of individualized damage calculations" due to differences in the value, character, and location of the properties). And this just addresses the economic damages. Plaintiffs also seek damages for emotional distress, which would presumably require testimony from each affected class member. *See Steering Comm.*, 461 F.3d at 602.

Of course, damages are often an individualized determination and Plaintiffs correctly note that courts often certify class actions and provide for bifurcated damages trials after a classwide trial on other issues. *See, e.g.*, *Watson v. Shell Oil Co.*, 979 F.2d 1014, 1016–18 (5th Cir. 1992) (affirming district court's decision to certify a bifurcated class action in which liability and punitive damages would be resolved commonly, and injury, causation, and actual damages would be resolved individually). But even though trial courts have flexibility in crafting bifurcated proceedings once a case is certified, the predominance inquiry that is a prerequisite to certification requires assessing

all the issues in a case—including damages—and deciding whether the common ones will be more central than the individual ones.  *Corley*, 152 F. App'x at 355 ("[P]laintiffs must first show that the cause of action, taken as a whole, satisfies the predominance requirement of Rule 23(b)(3).").  The district court did not err in concluding that highly individualized issues of both causation and damages would predominate over any common liability questions or defenses that might exist.

Plaintiffs nonetheless compare this case to other tort cases in which we have upheld certification decisions.  To be sure, although not the paradigmatic class action case involving a small amount of damages that makes individual or consolidated suits impractical,[2] we have upheld certification of class actions in certain "mass tort" cases.  But in addition to the much different procedural posture in those cases of reviewing whether a district court had abused its discretion in *certifying* the class, they involved single episodes of tortious conduct usually committed by a single defendant.  *See In re Deepwater Horizon,* 739 F.3d 790 (5th Cir. 2014) (affirming approval of settlement class for explosion at offshore platform); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir. 1999) (affirming trial court's holding that common issues would predominate because the class members "claim injury from the same defective ventilation system over the same general period of time" against a single defendant); *Watson*, 979 F.2d at 1023 (affirming approval of

---

[2] Indeed, the advisory committee notes to Rule 23 state that "[a] 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways.  In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried."  *See* FED. R. CIV. P. 23(b)(3) advisory committee's note to 1966 amendment.

class certification for explosion at refinery).[3]   Despite Plaintiffs' characterization of this case as a similar one involving a "single episode," the allegations and evidence demonstrate otherwise.  This lawsuit seeks to recover different damages caused by different acts committed by different defendants at different times over a five year period.  The district court did not abuse its discretion in concluding that individualized issues of causation and damages would predominate.

* * *

The denial of certification is AFFIRMED.  The case is remanded, which will allow the district court to consider how the case of the named plaintiffs should proceed.

---

[3] The cases from other circuits on which Plaintiffs rely also involve single episodes of tortious conduct committed by a single defendant.  *See Gintis v. Bouchard Transp. Co.*, 596 F.3d 64 (1st Cir. 2010) (vacating and remanding for evaluation of predominance and superiority requirements in case involving allegations of property damage resulting from an oil spill); *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 912 (7th Cir. 2003) (affirming class certification when plaintiffs alleged that a storage tank on the defendant's property contaminated soil and groundwater beneath their homes).