# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 8, 2020

No. 18-50551

Lyle W. Cayce
Clerk

NINA FLECHA, on behalf of herself and all others similarly situated,

Plaintiff - Appellee

v.

MEDICREDIT, INCORPORATED; FIDELITY AND DEPOSIT COMPANY OF MARYLAND,

Defendants - Appellants

Appeal from the United States District Court
for the Western District of Texas

Before JONES, HO, and OLDHAM, Circuit Judges.

JAMES C. HO, Circuit Judge:

As the Supreme Court has repeatedly reminded us, "the class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–1 (1979)). As Rule 23 of the Federal Rules of Civil Procedure makes clear, multiple conditions must be met before a district court may certify a class. The putative class certified here failed to satisfy several of those conditions, including commonality, typicality, and predominance. In addition, the putative class

No. 18-50551

presents substantial questions of Article III standing. Accordingly, we reverse the class certification order and remand for further proceedings.

I.

Nina Flecha neglected to pay for the medical care she received from Seton Medical Center Hays. To help Seton collect on that debt, Medicredit, Inc., a voluntary debt collection service provider, sent Flecha a series of collection letters—including the one at the heart of this suit. That letter stated:

> Your seriously delinquent Seton Medical Center Hays account remains unpaid despite past requests for payment.
>
> At this time, a determination must be made with our client as to the disposition of your account. Your failure to cooperate in satisfying this debt indicates voluntary resolution is doubtful. However, if it is now your desire to clear your account, you need to promptly remit the balance in full.

The letter concluded: "To discuss payment arrangements call our office."

Flecha never contacted Medicredit. But she did contact Seton and ask if she was eligible for any debt repayment programs. Seton informed her that she could enter into a payment plan if she made an upfront payment—one Flecha could not afford. Over the course of these conversations, Flecha claims she was given the impression that Seton would sue her to collect her debt.

In response to both the letter from Medicredit and her subsequent conversations with Seton, Flecha brought this suit under the Fair Debt Collection Practices Act (FDCPA) against Medicredit (as well as its surety bondholder, Fidelity and Deposit Company of Maryland). Flecha alleged that Medicredit's letter made a false threat of legal action against her, in violation of the FDCPA, because Seton in fact never intended to sue her over her unpaid medical debt.

2

No. 18-50551

Flecha sought class certification. She argued that everyone who received the same letter from Medicredit was likewise falsely threatened with legal action that Seton never actually intended to bring, and that everyone was accordingly entitled to statutory damages under the FDCPA. Both Flecha and Medicredit also filed cross-motions for summary judgment.

The district court denied summary judgment. It concluded that questions of fact remained about (1) whether an unsophisticated consumer would construe the Medicredit letter to threaten legal action, and (2) whether Seton intended to take legal action against Flecha.

After disposing of the summary judgment motions, the district court then granted Flecha's motion for class certification and appointed her class representative. The court defined the class as all Texans who had received the same letter from Medicredit that Flecha received:

> [A]ll persons in Texas from whom Medicredit attempted to collect and who received a form collection letter from Medicredit containing these statements:
>
> > Your seriously delinquent Seton Medical Center Hays account remains unpaid despite past requests for payment.
> >
> > At this time, a determination must be made with our client as to the disposition of your account. Your failure to cooperate in satisfying this debt indicates voluntary resolution is doubtful. However, if it is now your desire to clear your account, you need to promptly remit the balance in full.

Flecha estimates that at least 7,650 people in Texas received such a letter.

We granted Medicredit's motion for leave to appeal the class certification order under Rule 23(f).

## II.

In a Rule 23(f) class certification appeal, our analysis must "begin[], of course, with the elements of the underlying cause of action." *Erica P. John*

No. 18-50551

*Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).  After all, "a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996).  Absent such knowledge, it will be "impossible" for a court to determine, *inter alia*, (1) whether the issues for trial will be individualized or common to all putative class members, (2) whether the issues presented by the class representative will be typical of class members, and (3) whether the common issues at trial will predominate over individualized issues.  *Id.* at 745.

The FDCPA prohibits the use of "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  As relevant here, it specifically forbids debt collectors from making a "threat to take any action . . . *that is not intended to be taken*."  15 U.S.C. § 1692e(5) (emphasis added).

So the question in such suits is not only whether a consumer would perceive a particular statement as threatening legal action, but also whether such a statement is in fact true—that is, whether the creditor does indeed intend to bring suit against the debtor.  This element is significant to the class certification question because some creditors may not have a uniform litigation policy when it comes to all debtors.  They may instead decide whether to bring suit based on individualized circumstances.  And there is no false statement under the FDCPA (or as a matter of common sense) if the threat to bring suit is in fact sincere and true.

### III.

"We review class-certification decisions for abuse of discretion. . . . We review *de novo*, however, whether the district court applied the correct legal standards in determining whether to certify the class." *Gene & Gene LLC v.*

No. 18-50551

*BioPay LLC*, 541 F.3d 318, 325 (5th Cir. 2008) (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998)).

To be certified by a district court, the putative class must first satisfy all four threshold conditions of Rule 23(a)—namely, that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class"—conditions commonly known as "numerosity, commonality, typicality, and adequacy of representation." FED. R. CIV. P. 23(a); *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).

In addition, Flecha pursued a class under Rule 23(b)(3), which additionally requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"—conditions commonly known as "predominance and superiority." FED. R. CIV. P. 23(b)(3); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

Courts must enforce the requirements of Rule 23 vigorously. As the Supreme Court has made clear, the conditions of Rule 23 "do not set forth a mere pleading standard. A party seeking class certification must *affirmatively demonstrate* his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (first emphasis added).

On appeal, Medicredit argues that Flecha failed to meet this exacting standard. It contends that the putative class fails the commonality and typicality requirements of Rule 23(a) as well as the predominance requirement of Rule 23(b)(3). We agree.

No. 18-50551

To establish liability under the FDCPA, the class must prove not only that Medicredit's letter threatened legal action, but that it did so despite the fact that Seton did not intend to pursue legal action.  Yet Flecha failed to provide *any* evidence concerning Seton's intent to sue (or lack thereof)—let alone any evidence of *class-wide* intent.  This lack of evidence concerning Seton's class-wide intent is fatal to class certification here.

Under Rule 23(a)(2)'s "commonality" requirement, there must be "questions of law or fact common to the class."  As the Supreme Court explained in *Dukes*, commonality requires more than a shared cause of action or common allegation of fact—it requires a common legal contention capable of class-wide resolution:

> Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury.  This does not mean merely that they have all suffered a violation of the same provision of law. . . . Their claims must depend upon a common contention— for example, the assertion of discriminatory bias on the part of the same supervisor.  That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id.* at 349–50 (citation and quotations omitted).  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate *common answers* apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 350 (quotations omitted).

The putative Title VII sex discrimination class in *Dukes* failed because the class members "wish[ed] to sue about literally millions of employment decisions at once.  Without some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class

6

members' claims for relief will produce a common answer to the crucial question *why was I disfavored.*" *Id.* at 352.

This class fails for similar reasons. Every member of the putative class received the same allegedly threatening letter from Medicredit. But the FDCPA penalizes *empty* threats, not all threats. So the letter alone is insufficient to certify a class. As in *Dukes*, there is no "glue" here "holding the alleged reasons for all those [letters] together"—namely, evidence of a uniform intention by Seton regarding suit. *Id.* So it is likewise "impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question" *why was I threatened. Id.*

And that is because the record here is wholly devoid of any evidence of Seton's debt collection practices. Flecha presented no evidence concerning Seton's actual intent to sue—either to sue her or others like her.

To be sure, her complaint declares that Seton "does not sue consumers for medical debt." But she presented no evidence to that effect to support class certification. She did not depose anyone from Seton. And the deposition testimony from Medicredit indicates that Seton's practices were unknown even to Medicredit.

Rather than require evidentiary support, the district court simply "presume[d] for the purposes of class certification that Medicredit and Seton acted consistently in determining whether to sue the recipient of its letters." But courts must certify class actions based on proof, not presumptions. *See, e.g., Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("[A]ctual, not presumed, conformance with Rule 23(a) remains [] indispensable."); *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 481 (5th Cir. 2001) ("The district court unquestionably adopted an incorrect legal standard by stating that '[t]he adequacy of the putative representatives and of plaintiffs' counsel is presumed in the absence of specific proof to the contrary.' This is error; the party seeking

No. 18-50551

certification bears the burden of establishing that *all* requirements of rule 23(a) have been satisfied.").

So Flecha failed to carry her burden to "affirmatively demonstrate" commonality. *Dukes*, 564 U.S. at 350. She failed to demonstrate that her claim that Medicredit falsely threatened to take legal action against class members is capable of classwide resolution. And so that leaves the class without a common issue.

Her failure to prove commonality also establishes her failure to prove either typicality or predominance. After all, if there is no common issue uniting the putative class, Flecha's claim can't be "typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). *See also Falcon*, 457 U.S. at 157 n.13 ("The commonality and typicality requirements of Rule 23(a) tend to merge."). Nor can Flecha demonstrate that common issues "predominate over any questions affecting only individual members," when she hasn't even established the existence of a common issue to begin with. FED. R. CIV. P. 23(b)(2).

In sum, the putative class fails under Rule 23 and cannot be certified.

IV.

Because the class fails under Rule 23, there is no need to separately decide whether the class additionally fails under Article III. But the standing issues in this case are real. Countless unnamed class members lack standing.

Our court has not yet decided whether standing must be proven for unnamed class members, in addition to the class representative. *See, e.g., In re Deepwater Horizon*, 785 F.3d 1003, 1018–20 (5th Cir. 2015). But some circuits have held that "no class may be certified that contains members lacking Article III standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006).

That is significant, because there are undoubtedly many unnamed class members here who lack the requisite injury to establish Article III standing.

After all, the putative class sweeps in "all persons in Texas . . . who received a form collection letter" from Medicredit.  As a result, the putative class inevitably includes people who received the letter, but ignored it as junk mail or otherwise gave it no meaningful attention—and therefore lack a cognizable injury under Article III.

That said, we do not reach the issue.  That is because the Supreme Court has repeatedly instructed that we should first decide whether a proposed class satisfies Rule 23, before deciding whether it satisfies Article III—and that there is no need to answer the latter question if the class fails under the former. *See Amchem*, 521 U.S. at 612 ("The class certification issues are dispositive; because their resolution . . . is logically antecedent to the existence of any Article III issues, it is appropriate to reach them first."); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) ("Ordinarily, of course, this or any other Article III court must be sure of its own jurisdiction before getting to the merits.  But the class certification issues are, as they were in *Amchem*, 'logically antecedent' to Article III concerns.") (internal citations omitted); Transcript of Oral Argument at 13, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) (No. 97-1704) ("The Court: If you can't certify under [Rule 23](b)(1)(B), all the rest is beside the point.").  *See also, e.g.*, *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 565 n.12 (9th Cir. 2019) (declining to address jurisdiction "because the certification issue . . . is dispositive"); *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) (beginning its "analysis with the question of class certification, mindful of the Supreme Court's directive to consider issues of class certification prior to issues of standing").

After all, if there is no class action under Rule 23, then there are no unnamed class members in the suit—and thus no attendant class standing concerns.

To be sure, if it is the *class representative* who presents a standing problem, then *that* standing issue must be addressed first, prior to deciding class certification.  After all, if the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise.  *See, e.g.*, *Rivera v. Wyeth-Ayerst Labs*, 283 F.3d 315, 319 n.6 (5th Cir. 2002) ("In the instant case, in contrast to *Ortiz* and *Amchem*, the standing question would exist whether Rivera filed her claim alone or as part of a class; class certification did not create the jurisdictional issue."); *Ford v. NYLCare Health Plans*, 301 F.3d 329, 333 (5th Cir. 2002) (same).

But if it is only the unnamed class members who present a standing problem, then we are duty-bound to follow *Amchem* and *Ortiz*.  Under those precedents, if there is no class action, then there is no need to analyze the Article III standing of the unnamed members of a non-existent class.

In this case, no one alleges that Flecha herself has an Article III problem.  The only issue is whether the unnamed class members have standing.  And under *Amchem* and *Ortiz*, that standing issue is "moot," because the class fails under Rule 23.  *See, e.g.*, *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 153 (E.D. Penn. 2009) (noting that if "certification of the proposed class was improper, the issue of certain class members' standing would have been moot").

\* \* \*

The reversal of the class certification order here could mean that legitimate claims will go unheard.  This may be a "negative value suit," "in which class members' claims 'would be uneconomical to litigate individually.'" *In re Monumental Life Ins. Co.*, 365 F.3d 408, 411 n.1 (5th Cir. 2004) (quoting *Phillips Petroleum v. Shutts*, 472 U.S. 797, 809 (1985)).

But the Supreme Court has made clear that fear of underenforcement is no justification for class certification.  *See, e.g.*, *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013) (Rule 23 does not "establish an entitlement to

class proceedings for the vindication of statutory rights"). As we have recognized, proof that a particular action is a negative value suit may satisfy the requirement of superiority under Rule 23(b)(3). *See, e.g., Castano*, 84 F.3d at 748 (noting "[t]he most compelling rationale for finding superiority in a class action—the existence of a negative value suit"). But superiority is only one of the numerous conditions that must be met before a class may be certified under Rule 23. Proof of a negative value suit may be necessary to prove superiority— but it is not sufficient to warrant class certification under Rule 23(b)(3).[1]

Accordingly, we reverse the class certification order and remand for further proceedings.

---

[1] Nor is class certification the only solution to a negative value suit. The ability of prevailing parties to recover attorney fees (as is available here under the FDCPA) may also help solve the problem. *See* 15 U.S.C. § 1692k(a)(3) ("[I]n the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."); *see also Castano*, 84 F.3d at 748 ("The expense of litigation does not necessarily turn this case into a negative value suit, in part because the prevailing party may recover attorneys' fees under many consumer protection statutes.") (citing *Boggs v. Alto Trailer Sales*, 511 F.2d 114, 118 (5th Cir. 1975)).

No. 18-50551

ANDREW S. OLDHAM, Circuit Judge, concurring:

I agree with the Court's excellent opinion that the class must be decertified. I also agree with the Court's conclusion that "[c]ountless unnamed class members lack standing." *Ante,* at 8. In my view, that lack of standing is sufficient to decide the case.

I.

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992). With it, the Constitution empowers us to hear a case before us and decide the relevant issues of law. Without it, we can do nothing but announce the fact and dismiss the case. *See Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514 (1868). After all, "[h]ypothetical jurisdiction produces nothing more than a hypothetical judgment." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101 (1998).

It's unclear to me why these venerable principles would not apply with equal force at the class-certification stage. A plaintiff must show standing at each "successive stage[] of the litigation." *Lujan,* 504 U.S. at 561; *see also Arizonans for Official English v. Arizona,* 520 U.S. 43, 64–65 (1997). Nothing in Rule 23 could exempt the class-certification stage from this requirement. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints . . . ."); FED. R. CIV. P. 82 ("These rules do not extend . . . the jurisdiction of the district courts."); *accord Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 831 (1999). If anything, I'd think our standing analysis would be particularly rigorous at this stage, given the transformative nature of the class-certification decision. *Cf. Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 351 (2011) (noting certification stage requires "rigorous analysis").

No. 18-50551

Not only can certification change the number of plaintiffs from one to one million, but it also can dramatically change the rights and obligations of the plaintiffs. Class certification is the thing that gives an Article III court the power to "render dispositive judgments" affecting unnamed class members. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 219 (1995) (quotation omitted); *see also Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation."). That means, for example, that a post-certification judgment can prevent unnamed class members from bringing their claims again. *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008); *Cooper*, 467 U.S. at 874. It also means we must consider unnamed class members' standing before adjudicating the merits of their claims: "The exercise of judicial power, which can so profoundly affect the lives, liberty, and property of those to whom it extends, is therefore restricted to litigants who can show 'injury in fact' resulting from the action which they seek to have the court adjudicate." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982).

## II.

It's true that the Supreme Court in both *Amchem* and *Ortiz* avoided the Article III standing question. The Court did so, in part, by stating that certification "pertain[s] to statutory standing." *Ortiz*, 527 U.S. at 831. And at the time, the Court held statutory standing "may properly be treated before Article III standing." *Ibid*. That makes sense where both questions—whether the plaintiffs can sue under Rule 23 and whether the plaintiffs have Article III standing—are jurisdictional.

But the Supreme Court subsequently told us they're not. In *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the Court emphasized that the label "statutory standing" is "misleading" because the inquiry "does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional power to adjudicate the case." *Id.* at 128 n.4 (quotation omitted). That suggests it's a *merits* question whether the unnamed class members can sue under Rule 23—not a jurisdictional one. *See id.* at 128; *Steel Co.*, 523 U.S. at 89. And if *Steel Co.* teaches us anything, it's that we must do jurisdiction before the merits. That's why our precedent holds that "though the certification inquiry is more straightforward, we must decide standing first, because it determines the court's fundamental power even to hear the suit." *Rivera v. Wyeth-Ayerst Labs*, 382 F.3d 315, 319 & n.6 (5th Cir. 2002).

Article III is just as important in class actions as it is in individual ones. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1053 (2016) (Roberts, C.J., concurring) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not."). It's why the Court has reminded us that "[i]n an era of frequent litigation, class actions, sweeping injunctions with prospective effect, and continuing jurisdiction to enforce judicial remedies, courts must be more careful to insist on the formal rules of standing, not less so." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 146 (2011). I'd do so here.