# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 22, 2021

Lyle W. Cayce
Clerk

No. 19-20723

Corey Prantil; Ronald Whatley; Betty Whatley; Bret Simmons; Phyllis Simmons; Greg Nason; Larry Anderson; Tanya Anderson; Keith Lyons; Beverly Flannel; Roland Flannel,

*Plaintiffs—Appellees*,

*versus*

Arkema Incorporated,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-2960

Before Higginbotham, Elrod, and Haynes, *Circuit Judges*.
Patrick E. Higginbotham, *Circuit Judge*:

As Hurricane Harvey deluged southeastern Texas with record floods, volatile chemicals at a facility in Crosby, Texas, combusted, releasing toxic ash and smoke into the surrounding communities and causing the evacuation of nearby residents. Seeking redress for the physical and financial effects of the incident, certain Crosby-area property owners brought a class action against the facility's owner—Arkema, Inc.—on behalf of themselves and

their neighbors. Arkema appeals from an order granting class certification. We vacate the district court's certification order and remand the case for further proceedings under Rule 23.

## I.

Arkema's facility in Crosby, Texas, produces Luperox, a liquid organic peroxide used to make plastics and composites. Luperox is a volatile compound that decomposes and combusts unless refrigerated. The Crosby facility sits in a flood plain near the Gulf Coast, leaving it vulnerable to the approach of Hurricane Harvey. By August 24, 2017, it was clear that Harvey would make landfall and likely stall over Texas. Arkema continued production at Crosby until August 25, 2017, before implementing the facility's hurricane preparedness plan. Several days of heavy rain and rising flood waters at Crosby forced the facility's "ride-out" team to move nearly 350,000 pounds of combustible materials to refrigerated trailers set on higher ground. But the floodwaters' continued rise eventually threatened the trailers' cooling systems as well, and on August 29, 2017, Arkema alerted local authorities that a combustion event was imminent. The authorities responded by establishing a 1.5-mile evacuation zone around the facility. Between August 31 and September 4, nine refrigerated trailers burned in three separate ignitions, the last of which was a controlled burn by emergency personnel. Further, two of the facility's wastewater tanks overflowed, dispersing contaminated water and bringing the count to five total emissions events. Shortly afterward, local residents saw clouds of white smoke and accumulating ash on their properties, and persons inside and outside of the established 1.5-mile evacuation zone reported physical symptoms including bodily rashes, headaches, eye irritation, blisters, and respiratory difficulty.

Plaintiffs are local property owners who seek to represent a class of all property owners within a seven-mile radius of the Crosby facility to pursue

No. 19-20723

injunctive relief and damages against Arkema. They claim to have suffered adverse health effects, property damage, or both, because of Arkema's emissions. They bring claims against Arkema under the Resource Conservation and Recovery Act (RCRA), the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), and the common-law doctrines of negligence, trespass, and public nuisance.

After extended oral argument on Plaintiffs' motion for class certification and Akrema's motions to exclude certain experts, the district court granted Arkema's motion to exclude Plaintiffs' damages expert, but it credited three of Plaintiffs' experts and granted Plaintiffs' motion for class certification.[1] In granting certification, the district court held that the proposed class met the elements of Federal Rule of Civil Procedure 23(a) and that it should be certified as a damages class under Rule 23(b)(3) because common issues would predominate in the resolution of the class claims and that a class action was the superior method for adjudicating the dispute.[2] The district court also certified an injunctive-relief class under Rule 23(b)(2) because the "actions alleged apply broadly to the entire class, and the injunctive relief sought will commonly address this injury."[3] We granted leave to appeal on October 17, 2019.

Arkema urges four arguments on appeal: (1) that the district court did not conduct the rigorous analysis required by Fifth Circuit and Supreme Court precedent, to ensure that the individual claims can be fairly and effectively adjudicated in a class action; (2) that the district court erred when

---

[1] *Prantil v. Arkema*, No. 17-2960 at 39 (S.D. Tex. June 3, 2019) (order granting class certification).

[2] *Id.* at 19-27, 29-39.

[3] *Id.* at 28.

3

it determined that the proposed class met Rule 23(b)(3)'s predominance requirement and Rule 23(b)(2)'s cohesiveness requirement; (3) that the benefits realized by classwide adjudication of common questions would be lost in the necessary sifting through individualized evidence on the causation and injury elements in addition to the intractably individualized nature of the damages and injunction inquiries; and (4) that the district court erred by relying on certain expert opinions in its certification decision without first ensuring those opinions would be admissible at trial under the *Daubert* standard.

## II.

We review the district court's decision to certify a class for abuse of discretion.[4] Although a district court has broad discretion to certify a class, it must "rigorously analyze Rule 23's prerequisites" before doing so.[5] Such analysis requires "the district court to go beyond the pleadings to determine whether the requirements of Rule 23 have been met: 'a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.'"[6] Additionally, the district court must consider "how a trial on the merits would be conducted" if the class were certified.[7]

We begin with the standard applicable to expert evidence at the class-certification stage. We then address the predominance of common questions

---

[4] *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 375 (5th Cir. 2016).

[5] *Spence v. Glock, G.m.b.H.*, 227 F.3d 308, 310 (5th Cir. 2000).

[6] *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir.2007) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996)).

[7] *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).

No. 19-20723

in the Rule 23(b)(3) damages class and the cohesiveness of the Rule 23(b)(2) injunctive-relief class.

## A. *Daubert*'s Applicability to Class Certification

Since its early days, Rule 23 with its b(2) and b(3) classes has played an increasingly important role in addressing the challenges of aggregating large numbers of persons seeking recompense for a single event or for injuries suffered from a common set of facts—product failures, myriad disasters at the hand of man and nature. With all its difficulties in application, the class device has proven to be a powerful workhorse to the benefit of plaintiffs and defendants so as now to be essential.

Yet, certification changes the risks of litigation often in dramatic fashion.[8] Thus, under Rule 23(f), we have the discretion to hear interlocutory appeals of class certification orders.[9] This rule was a response to the determinative character of the certification decision and a perceived need for developing a jurisprudence of federal class actions across substantive lines in conformity with the Enabling Act.[10] The Supreme Court in turn developed a mootness doctrine that treated certification of a class as the determinant— loss of the class representative did not moot a certified class.[11] In short, these responses to the consequential character of class certification frames the

---

[8] *See Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 834 (7th Cir. 1999) ("[A] denial of class status can doom the plaintiff," while "a grant of class status can put considerable pressure on the defendant to settle.").

[9] FED. R. CIV. P. 23(f).

[10] Advisory Committee's 1998 Note on subd. (f) of FED. RULE CIV. PROC. 23.

[11] *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75–76 (2013) (explaining that under *Sosna v. Iowa*, 419 U.S. 393 (1975) and *United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980), "a putative class acquires an independent legal status once it is certified under Rule 23").

question of the quality of evidence its rests upon. And, we ask, when the cementing of relationships among proffered class members of liability or damages or both turns on scientific evidence should we insist that the metric of admissibility be the same for certification and trial. We answer that question in the affirmative; the *Daubert* hurdle must be cleared when scientific evidence is relevant to the decision to certify.

In so holding, we join three other federal courts of appeal.[12] The Third Circuit's reasoning on this issue in *In re Blood Reagents Antitrust Litigation*, is particularly instructive, drawing as it does on recent Supreme Court precedent.[13] The Third Circuit saw the need to apply *Daubert* at the certification stage as a natural extension of the Supreme Court's admonition in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011), and *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013), to conduct a "rigorous analysis" of the proposed class's conformity with Rule 23.[14] In *Dukes*, the Supreme Court expressed "doubt" that "*Daubert* did not apply to expert testimony at the certification stage of class-action proceedings."[15] And in *Comcast*, which concerned use of an expert's damages model to certify an antitrust class action, the Supreme Court reaffirmed that it is incumbent on plaintiffs to submit "evidentiary proof" of their compliance with Rule 23.[16] As the Third Circuit observed, "[e]xpert testimony that is insufficiently reliable to satisfy the *Daubert* standard cannot 'prove' that the Rule 23(a) prerequisites have

---

[12] *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015); *Sher v. Raytheon Co.*, 419 F. App'x 887, 890–91 (11th Cir. 2011); *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 816 (7th Cir. 2010).

[13] 783 F.3d 183 (3d Cir. 2015).

[14] *Id.* at 187.

[15] 564 U.S. at 354.

[16] 569 U.S. at 33–34.

been met 'in fact,' nor can it establish 'through evidentiary proof' that Rule 23(b) is satisfied."[17] This is consistent with our prior holding that the class "certification inquiry . . . must be made based on adequate admissible evidence to justify class certification."[18] Thus, if an expert's opinion would not be admissible at trial, it should not pave the way for certifying a proposed class.

Plaintiffs do not take issue with this reasoning; they do not contend that case law or practical considerations militate against using *Daubert* for class certification. Instead, they contend that Arkema has no grounds for complaint here because the district court applied a full-bore *Daubert* analysis when it assessed Plaintiffs' experts. Our able district judge here was sensitive to the concerns presented by expert evidence. He heard arguments on each of Arkema's motions, and granted one, excluding Plaintiffs' damages expert "because he has not actually built or tested any regression analyses that he suggests could be appropriate for determining damages on a class-wide basis."[19] The district court did not disregard its gate-keeping role, but its analysis of the expert reports reflect hesitation to apply *Daubert*'s reliability standard with full force.

The district court began its discussion of the expert reports by observing that "[w]hether a full *Daubert* analysis at the class certification stage is required is unclear."[20] When discussing Plaintiffs' evidence of chemical contamination, the district court observed that "[w]hile it certainly would have been *better* for Dr. Kaltofen additionally to include the

---

[17] *In re Blood Reagents*, 783 F.3d at 187.

[18] *Unger v. Amedisys Inc.*, 401 F.3d 316, 319 (5th Cir. 2005).

[19] *Prantil*, No. 17-2960 at 15.

[20] *Id.* at 6.

background levels, it was not necessary under *Daubert* at the class certification stage,"[21] implying that *Daubert* is less applicable to evidence used for certification. In its certification order, the district court was not as searching in its assessment of the expert reports' reliability as it would have been outside the certification setting. We do not suggest that the remaining reports should be excluded; some of Arkema's objections may only affect the weight of the reports without undermining their fundamental reliability. In sum, an assessment of the reliability of Plaintiffs' scientific evidence for certification cannot be deferred.

### B. The Predominance of Questions Common to the Damages Class

The district court determined that the proposed damages class was suitable for certification under Rule 23(b)(3), which provides that a class action can be maintained if Rule 23(a) is satisfied, if "questions of law or fact common to class members predominate over any questions affecting only individual members, and [if] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[22] Arkema does not dispute that the proposed class meets Rule 23(a)'s threshold requirements or that a class action is the superior litigation vehicle.[23] This leaves the issue of predominance.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[24] It "calls

---

[21] *Id.* at 12.

[22] Fed. R. Civ. P. 23(b)(3).

[23] *Prantil*, No. 17-2960 at 18-27 (finding that the class satisfies the requirements of numerosity, commonality, typicality, adequacy, and ascertainability).

[24] *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016) (en banc) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

upon courts to give careful scrutiny to the relation between common and individual questions in a case."[25] Predominance is a "far more demanding" hurdle than Rule 23(a)'s commonality requirement.[26]

Courts should consider predominance on a claim-by-claim basis,[27] and the district court did so here: for negligence, it found duty and breach to be common issues;[28] for trespass, the question of unlawful entry was common to the class;[29] for public nuisance, the question of unreasonable interference was common.[30] Similarly, the district court concluded that all three elements of Plaintiffs' RCRA claim presented common questions.[31] As for CERCLA,

---

[25] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Id.* (alteration in original) (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4:50 (5th ed. 2012)).

[26] *Amchem Prods., Inc.*, 521 U.S. at 623–24.

[27] *Castano*, 84 F.3d at 744.

[28] *Prantil*, No. 17-2960 at 31.

[29] *Id.* at 31-32. For a claim of trespass to real property, the plaintiff must show ownership or a right to possess property; physical, intentional, and voluntary entrance by the defendant; and injury. *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. Ct. App.—Fort Worth 2006, pet. denied).

[30] *Prantil*, No. 17-2960 at 32. The elements of a public nuisance claim are an "unreasonable interference with a right common to the general public" and a "special injury" that is "distinct from the injury to the public at large." *Peiqing Cong v. ConocoPhillips Co.*, 250 F. Supp. 3d 229, 233 (S.D. Tex. 2016).

[31] *Prantil*, No. 17-2960 at 33. To bring an RCRA claim, the plaintiff must show "(1) that the defendant is a person, including, but not limited to, one who was or is a generator or transporter of solid or hazardous waste or one who was or is an owner or operator of a solid or hazardous waste treatment, storage, or disposal facility; (2) that the defendant has contributed to or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and (3) that the solid or hazardous waste may present

the district court found that three issues—Arkema's status as a qualifying responsible person, the Crosby site's status as a qualifying facility, and the occurrence of a hazardous release—were common.[32]

The district court then addressed whether Plaintiffs' alleged damages, the diminution in their property values, would entail individual inquiries outweighing the common inquiries relating to liability. Plaintiffs proposed to calculate classwide damages through mass property appraisals, but the district court rejected the report of Plaintiffs' damages expert because he failed to offer a reliable means of making these calculations. Neither the court nor Plaintiffs identified another means by which Plaintiffs could calculate damages on a classwide basis. Nonetheless, the district court found that common legal and factual questions still predominated because "'virtually every issue prior to damages is a common issue,'" and Plaintiffs proposed to bifurcate the proceedings so that damages could be addressed separately, if at all.[33]

The district court identified elements of each claim that would present common questions, but its predominance inquiry then paused. With that pause, the district court's approach resembles that taken by the district court

---

an imminent and substantial endangerment to health or the environment." *Cox v. City of Dallas*, 256 F.3d 281, 292 (5th Cir. 2001).

[32] *Prantil*, No. 17-2960 at 33-34. A CERCLA plaintiff must show "(1) that the site in question is a 'facility' as defined in [42 U.S.C.] § 9601(9); (2) that the defendant is a responsible person under [42 U.S.C.] § 9607(a); (3) that a release or a threatened release of a hazardous substance has occurred; and (4) that the release or threatened release has caused the plaintiff to incur response costs." *Vine St. LLC v. Borg Warner Corp.*, 776 F.3d 312, 315 (5th Cir. 2015).

[33] *Prantil*, No. 17-2960 at 37 (quoting *Bertulli v. Ind. Ass'n of Continental Pilots*, 242 F.3d 290, 298 (5th Cir. 2001)).

in *Madison v. Chalmette*.[34] In *Madison*, the district court certified a class of individuals who sought damages for exposure to a refinery's emission of coke dust while attending a reenactment of the Battle of New Orleans. The district court concluded that class certification was appropriate because "there is one set of operative facts that [will] determine liability[:] Plaintiffs were either on the battlefield and exposed to the coke dust or they were not."[35] We vacated the order because, despite the appealing simplicity of its formulation, "[t]he district court did not meaningfully consider how Plaintiffs' claims would be tried."[36] The inadequacy of the district court's predominance inquiry was due, in part, to its failure to account for issues implicated by the asserted claims and defenses, issues turning on potentially nuanced determinations of plaintiffs' "location, exposure, dose, susceptibility to illness, nature of symptoms, type and cost of medical treatment, and subsequent impact of illnesses on individuals."[37] Although we did "not suggest that class treatment [was] necessarily inappropriate," we vacated the certification order and remanded the case because the lack of "'analysis or discussion regarding how [the district court] would administer the trial'" was an abuse of discretion.[38]

Here, as in *Madison*, the district court's certification order did not discuss the considerations affecting the administration of trial, and it concluded that common questions would predominate without adequately addressing Arkema's arguments that causation, injury, and damages would

---

[34] 637 F.3d 551 (5th Cir. 2011).

[35] *Id.* at 556.

[36] *Id.*

[37] *Id.* at 557.

[38] *Id.* at 556–57 (quoting *Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 425–26 (5th Cir. 2004)).

be highly individualized. The district court's discussion of trial administration was limited to observing that it was amenable to Plaintiffs' proposal to bifurcate the trial of liability and damages. But it did not discuss the manner in which it would conduct the liability phase or how it would implement Plaintiffs' proposed "bellwether trials" at the damages phase. Although the district court acknowledged that Plaintiffs' mass appraisal approach to property damages was untenable after their expert was disqualified, it did not discuss how this difficulty might affect an eventual damages phase in the proceedings. The district court recognized that individualized damages do not make the case per se unsuitable for class treatment,[39] and then concluded that any issues could be addressed as they arose. In so doing, the court drifted to the "figure-it-out-as-we-go-along" approach, one to be avoided.[40]

When considering the propriety of class certification, the district court must "respond to the defendants' legitimate protests of individualized issues that could preclude class treatment."[41] This is part of the district court's obligation to "understand the claims [and] defenses" at play.[42] A

---

[39] *See, e.g.*, *In re Deepwater Horizon*, 739 F.3d 790, 815–16 (5th Cir. 2014) ("[I]t is indeed possible to satisfy the predominance ... requirements of Rule 23(b)(3) in a mass tort or mass accident class action despite the particular need in such cases for individualized damages calculations." (internal quotations omitted)).

[40] *Madison*, 637 F.3d at 557.

[41] *Chavez v. Plan Ben. Servs., Inc.*, 957 F.3d 542, 546 (5th Cir. 2020) (citing *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 842-43 (5th Cir. 2012) (noting that "[t]he district court clearly rejected" the defendant's individualization argument but had not "sufficiently analyzed" it)).

[42] *Castano*, 84 F.3d at 745.

certification order ought to reflect the district court's consideration of a defendant's weightiest arguments against certification.[43]

We find that the certification order is wanting in its answer to Arekma's arguments that a trial of class claims would devolve into individualized inquiries on causation, injury, and damages. For instance, the district court rejected Arkema's contention that causation would become too individualized by reasoning that because "Plaintiffs focus only on chemicals with a strong link to the facility explosion, there are fewer hyper-localized alternative sources that would turn proof of causation into a series of mini-trials. . . . [and] alternative causes would likely apply to large chunks or all of the class area."[44] The basis for this conclusion that few alternative sources need be considered is unclear. Other parts of the order suggest that the district court may have relied on Plaintiffs' expert, Dr. Kaltofen, to conclude that alternative sources for the chemicals in question would not be an issue. But the order also states that Dr. Kaltofen addressed only "*some* of these alternative sources and ruled them out in his rebuttal report."[45] The difficulty is that we are uncertain whether alternative sources will be a factor at trial and whether these alternative sources can be dealt with in groups, as the district court suggested.

The district court also held that injury resulting from Arkema's alleged negligence, trespass, etc. could be proven on a classwide basis because "individuals' exposure to contaminants results not just from contaminants

---

[43] *See, e.g.*, *Chavez*, 957 F.3d at 549 (reversing a class certification where the district court responds to "warring factual contentions" concerning putatively common issues, with a "thin survey" and "unsupported assurance" as explanations for why predominance is satisfied).

[44] *Prantil*, No. 17-2960 at 31.

[45] *Id.* at 14 (emphasis added).

on their properties, but from community-wide contaminants that individuals are exposed to as they go about their daily lives in the area."[46] This reasoning has a welcome, commonsense appeal, but "Rule 23 requires the court to 'find,' not [] assume, the facts favoring class certification."[47] The issue is whether the record contains scientific evidence supporting the conclusion that the movements of class members could result in exposure sufficient to cause cognizable harm.[48] An assumption about the movement of persons throughout the class area cannot relieve Plaintiffs of their burden to "'*affirmatively demonstrate* [their] compliance with [] Rule [23].'"[49] And by itself, the assumption does not allay the concern that proof of causation and harm could vary greatly from one class member to another based on the location of their property and the extent and frequency of their movements within the class area.

Much of the district court's predominance analysis proceeded from its view that "all injuries resulted from [a] single course of conduct," and thus "the focus will be on Defendant's actions."[50] Of course, a case may be relatively more suitable for class treatment where only one defendant and one course of conduct are at issue.[51] But what is needed here is discussion of how proof of Arkema's conduct will affect trial.[52] Absent such analysis, we are

---

[46] *Id.* at 26-27.

[47] *Unger*, 401 F.3d at 321.

[48] "[C]ourts must certify class actions based on proof, not presumptions." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 768 (5th Cir. 2020).

[49] *Id.* at 766–67 (quoting *Dukes*, 564 U.S. at 350).

[50] *Prantil*, No. 17-2960 at 32.

[51] *See, e.g.*, *Crutchfield*, 829 F.3d at 378 (listing cases).

[52] *See Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008) ("The district court did not explain how the common course of conduct it described would affect

unable to judge whether the common issues relating to Arkema's conduct in the leadup to Hurricane Harvey are relatively more complex such that they can be expected to predominate over individualized issues.[53] Future certification proceedings would here benefit from detailing the evidence the parties may use to prove or defend against liability and its commonality to all class members.

We do not exhaustively catalogue the matters deserving consideration under Rule 23(b)(3) on remand. And we do not suggest that Arkema is entitled to prevail on its counterarguments to certification. We hold only that the relative balance of concededly common claim elements to contested elements of causation and injury warrants closer attention.

### C. The Cohesiveness of the Injunctive-Relief Class

Plaintiffs seek two separate forms of injunctive relief from Arkema: medical monitoring and property remediation. Rule 23(b)(2) provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"[54] "It is well-established that '[i]nstead of requiring common issues, [Rule] 23(b)(2) requires common behavior by the defendant

---

a trial on the merits. Thus, the district court's assertion that this case would not degenerate into a series of individual trials is largely unsupported and is, in our opinion, mistaken.").

[53] *Cf. Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006) ("Based on the evidence presented to the district court regarding the complexity of the medical causation and damages issues, and with little evidence that the liability issues are similarly complex, it was not an abuse of its discretion for the district court to conclude that Appellants had failed to demonstrate that the class issue of Appellee's negligence or strict liability predominates over the vastly more complex individual issues of medical causation and damages.").

[54] FED. R. CIV. P. 23(b)(2).

toward the class.'"[55] Thus, 23(b)(2) certification has three requirements: "(1) 'class members must have been harmed in essentially the same way'; (2) 'injunctive relief must predominate over monetary damage claims'; and (3) 'the injunctive relief sought must be specific.'"[56] "The specificity element requires plaintiffs to give content to the injunctive relief they seek so that final injunctive relief may be crafted to describe in reasonable detail the acts required."[57]

The district court concluded that members of the proposed class had been harmed in essentially the same way because the injuries for which they seek injunctive relief arise from Arkema's conduct in preparing for and mitigating the effects of Hurricane Harvey on its Crosby facility. Concerning Plaintiffs' request for medical monitoring, the district court found that "[i]f their allegations are true, Plaintiffs need to be repeatedly tested for health effects so that cancer or other diseases may be caught early and treated," and "the injunctive relief sought will commonly address [Plaintiffs'] injury."[58] The district court envisioned the medical monitoring injunction as an iterative process involving "early detection and treatment" through which "a more complete understanding of the potential consequences of exposure is attained and treatment plans are put into place."[59] But the district court did not discuss the range or types of medical monitoring the injunction would implement.

---

[55] *Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017) (quoting *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012)).

[56] *Id.* (quoting *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007)).

[57] *Yates*, 868 F.3d at 367 (internal quotations omitted)

[58] *Prantil*, No. 17-2960 at 27.

[59] *Id.* at 27-28.

Concerning Plaintiffs' request for property remediation, the district court explained that "a remediation program can be applied class-wide—perhaps one that orders testing of Plaintiffs' properties and cleanup of contaminants, as described" in the report of one of Plaintiffs' experts, Dr. Glass.[60] The district court observed that it was necessary to deal with remediation on a classwide basis because "[i]ndividual clean-up attempts would be ineffectual, [and] because landowners could still be exposed as they move throughout the class area."[61] Although it mentioned the possibility of implementing the testing program in Dr. Glass's report, the district court made no specific findings as to what the property remediation program would entail.

These discussions of the injunctions in their broad strokes do not satisfy the requirement that injunctive relief be reasonably specific. Our decisions make clear that more is needed than a common failure by the defendant and the prospect that all class members could realize some benefit if the defendant is compelled to act or desist.[62] To be sure, "Rule 23(b)(2) does not require that every jot and tittle of injunctive relief be spelled out at the class certification stage," but some "'reasonable detail' as to the 'acts required'" is necessary.[63]

We do not agree with Arkema that our decision in *M.D. ex rel. Stukenberg v. Perry* necessarily precludes all possible forms of injunctive relief for the proposed class. In *Stukenberg*, a proposed class of foster care children sought "at least twelve broad, classwide injunctions, which would require the

---

[60] *Id.* at 28.

[61] *Id.*

[62] *Stukenberg*, 675 F.3d at 846.

[63] *Yates*, 868 F.3d at 368 (quoting *Stukenberg*, 675 F.3d at 848).

district court to institute and oversee a complete overhaul of Texas's foster care system."[64] Although we reversed the district court's finding that the class was cohesive, we clarified that Rule 23(b)(2) does not require "a specific policy uniformly affecting—and injuring—each [plaintiff] . . . so long as declaratory or injunctive relief 'settling the legality of the [defendant's] behavior with respect to the class as a whole is appropriate.'"[65] The proposed class in *Stukenberg* sought injunctive relief addressing years of varied neglect and requiring the district court to outsource responsibility for determining the form of the injunctions to expert panels that would do the actual work of tailoring relief.[66]

Here, by contrast, there is stronger evidence that through its response to a specific event, Hurricane Harvey, Arkema "acted or refused to act on grounds that apply generally to the class."[67] The current record does not compel the conclusion that Plaintiffs' medical and property injuries are incapable of being addressed by classwide injunctions. For instance, it is not necessarily fatal to a uniform scheme of property remediation that certain properties may contain higher concentrations of contaminants than others, provided Plaintiffs can identify a common method of remediation and some reasonable standard by which remediation might be assessed.[68]

---

[64] *Stukenberg*, 675 F.3d at 845.

[65] *Id.* at 847–48 (quoting FED. R. CIV. P. 23(b)(2) 1966 Amendment advisory committee note).

[66] *Id.* at 846-47.

[67] FED. R. CIV. P. 23(b)(2)

[68] *Cf. Yates*, 868 F.3d at 368 (requested injunction deemed reasonably specific for class certification where plaintiffs "identified air-conditioning as a remedy that would provide relief to each member of the class" and identified "maintaining a heat index of 88 degrees or lower" as the applicable standard).

Still, we are sensitive to the challenges inherent in crafting appropriate injunctions. As Arkema notes, there is some uncertainty as to what symptoms or conditions will be medically monitored for all class members, whether individual health considerations need to be addressed for relief to be adequate. Concerning property, the certification order leaves us uncertain as to how the extent of necessary property remediation can be determined, and whether a responsive injunction can be fashioned to account for Arkema's past remediation efforts. If the district court intends to wholly adopt one or another proposal from Plaintiffs' experts, it must say so and explain how that proposal overcomes Arkema's concerns.[69] Despite the present uncertainty concerning the propriety of classwide injunctive relief, we are confident that by evaluating the particulars of each injunction on remand, both the parties and the district court will arrive at a nuanced assessment of whether Plaintiffs' claims for relief can be effectively addressed in a class action.[70]

## III.

We do not here limit the tools necessary to the district court's management of complex litigation, such as the oft-deployed bifurcation of liability and damages. The reality of Rule 23 is that it depends upon the

---

[69] *Cf. Maldonado*, 493 F.3d at 524 (plaintiffs could not seek classwide injunctive relief under 23(b)(2) requiring defendant to provide "mutually affordable healthcare" when plaintiffs "failed [] to identify any way to determine what a reasonable or 'mutually affordable' rate [was] for the wide variety of medical services offered").

[70] *See id.* ("The difficulty in specifying exactly what Appellants seek from an injunction highlights the fact that individualized issues here overwhelm class cohesiveness.").

No. 19-20723

management skills of our able district courts. We only set the boundaries of the field on which their discretion is applied.

We vacate the district court's order certifying the proposed class and remand the case for further proceedings including certification of the class.